UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KATHERINE REYNOLDS,<br><br>Defendant | Criminal No.  24cr10233<br><br>Violations:<br><br><u>Counts One-Two</u>: Wire Fraud; Aiding and Abetting<br>(18 U.S.C. § 1343; 18 U.S.C. § 2)<br><br><u>Count Three</u>: Money Laundering<br>(18 U.S.C. § 1957)<br><br><u>Wire Fraud Forfeiture Allegation</u>:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c))<br><br><u>Money Laundering Forfeiture Allegation</u>:<br>(18 U.S.C. § 982(a)(1)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

A.     Relevant Individuals and Entities

1.     Defendant, KATHERINE REYNOLDS ("REYNOLDS") was a resident of Plymouth, Massachusetts.

2.     American Lending Center (ALC") was a non-bank lending institution headquartered in California. ALC participated as a lender in a program referred to as the Paycheck Protection Program ("PPP") operated by the United States Small Business

1

Administration ("SBA"). As a PPP lender, ALC was authorized to lend funds to eligible borrowers under the terms of the PPP.

3. Merrimack Valley Credit Union ("MVCU") was a federally insured financial institution based in Massachusetts.

4. The SBA was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

B. The Paycheck Protection Program

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the PPP.

6. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was

2

required to state, among other things, its gross income from a prior year. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

7. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

## Scheme to Defraud

9. Beginning in or around May 2021, and continuing until in or around June 2021, in the District of Massachusetts and elsewhere, REYNOLDS devised a scheme to defraud, and to obtain PPP funds, by filing false and fraudulent PPP loan applications with ALC, a participant in the PPP program.

10. The purpose of the scheme was for REYNOLDS to obtain PPP loan proceeds under false and misleading pretenses, including false statements about the existence and revenues of a massage business, and false documents and forms submitted in support of PPP loan applications.

### A. The PPP Loan Application in the Name of Katherine Reynolds

11. In furtherance of the scheme, on or about May 20, 2021, REYNOLDS submitted a PPP Loan application to ALC. The application falsely claimed that REYNOLDS owned a business that had $106,000 in gross income for 2019.

12. REYNOLDS submitted false tax documents to support her false assertions that she owned a business that had $106,000 in gross income for 2019, including a false 2019 Schedule C purporting to report income and expenses for a "Massage Parlour" business owned by REYNOLDS.

13. The PPP Loan Application was approved by ALC, and, on or about June 17, 2021, ALC distributed $20,833.33 into MVCU account number ending in 0813 via an interstate wire. REYNOLDS was a joint account holder on the MVCU account number ending in 0813.

### B. The PPP Loan Application in the Name of Katherine Reynolds' Father

14. Also on or about May 20, 2021, a second PPP Loan application was submitted to ALC in the name of REYNOLDS' father. The application falsely claimed that REYNOLDS' father owned a business that had $106,000 in gross income for 2019.

15. REYNOLDS submitted, or abetted the submission of, false tax documents to support false assertions that her father owned a business that had $106,000 in gross income for 2019, including a false 2019 Schedule C purporting to report income and expenses for a "Massage Parlour" business owned by REYNOLDS' father.

16. The PPP Loan Application was approved by ALC, and, on or about June 17, 2021, ALC distributed $20,833.33 into MVCU account number ending in 0813 via an interstate wire.

Unlawful Monetary Transactions with Proceeds of the Scheme

17. Between in or about June 17, 2021 and August 5, 2021, REYNOLDS used the funds fraudulently obtained from the PPP loans.

18. For example, on or about June 25, 2021, REYNOLDS withdrew $20,000 in cash from MVCU account number ending in 0813.

## COUNTS ONE - TWO
Wire Fraud; Aiding and Abetting
(18 U.S.C. § 1343; 18 U.S.C. § 2)

The Grand Jury charges:

19. The Grand Jury re-alleges and incorporates by reference paragraphs 1-16 of this Indictment.

20. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

KATHERINE REYNOLDS,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | June 17, 2021 | A wire transfer of $20,833.33 to MVCU account number ending in 0813 from ALC that was for the loan approved in the name of Katherine Reynolds and processed via servers in California and other locations outside Massachusetts. |
| 2 | June 17, 2021 | A wire transfer of $20,833.33 to MVCU account number ending in 0813 from ALC that was for the loan approved in the name of Albert Frasier and processed via servers in California and other locations outside Massachusetts. |

All in violation of Title 18, United State Code, Sections 1343 and 2.

# COUNT THREE
## Money Laundering
## (18 U.S.C. § 1957)

The Grand Jury further charges:

21. The Grand Jury re-alleges and incorporates by reference paragraphs 1-18 of this Indictment.

22. On or about the date set forth below, in the District of Massachusetts and elsewhere, the defendant,

## KATHERINE REYNOLDS,

did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, as set forth below, where such property was derived from specific unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343 as charged in Counts One and Two:

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 3 | June 25, 2021 | Cash withdrawal of $20,000 from REYNOLDS' MVCU account number ending in 0813 |

All in violation of Title 18, United State Code, Section 1957.

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

23. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One and Two, the defendant,

KATHERINE REYNOLDS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following asset:

    a. $41,666.66 in United States currency, to be entered in the form a forfeiture money judgment.

24. If any of the property described in Paragraph 23, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 23 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The Grand Jury further finds:

25. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Count Three, the defendant,

KATHERINE REYNOLDS

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a. $20,000 in United States currency, to be entered in the form of a forfeiture money judgment.

26. If any of the property described in Paragraph 25, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 25 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
BRIAN J. SULLIVAN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: August 6, 2024
Returned into the District Court by the Grand Jurors and filed.

/s/ Leonardo T. Vieira, 1:23pm
DEPUTY CLERK